**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. ELH-14-0271** |
| | ) | |
| **KEYON PAYLOR,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

...o0o...

**GOVERNMENT'S CONSOLIDATED OPPOSITION TO**
**PAYLOR'S PRETRIAL MOTIONS**

Keyon Paylor has moved to suppress a firearm that Baltimore Police officers recovered from the front porch of his residence on January 2, 2014. He has also moved to suppress a statement that he made to the officers shortly before the firearm was found.

Both of Paylor's motions should be denied. *First,* with regard to the firearm, the officers entered onto Paylor's property—admittedly without a warrant—for the limited purpose of pursuing a fleeing suspect, whom they reasonably (and accurately) believed was unlawfully carrying a handgun at the time. On the facts of this case, the officers were entitled, under the exigent circumstances exception to the warrant requirement, to pursue Paylor onto his property in order to effect a lawful arrest (or, alternatively, a lawful *Terry* stop), which was entirely set in motion on a public street. The officers were further entitled to seize and secure the firearm that Paylor had placed under a seat cushion on his front porch (while still in the presence of the officers) moments before he fled into his house.

*Second*, with regard to Paylor's statement, the evidence will show that the statement was spontaneous, voluntary, and unprompted by questioning or compulsion of any kind. The statement is therefore admissible under *Rhode Island v. Innis* and its progeny.

## RELEVANT FACTUAL BACKGROUND

Paylor is charged by indictment with one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). The charge against Paylor is based on the following facts.

On the morning of January 2, 2014, four Baltimore Police officers (D-Sgt. Burns and Detectives Moore, Romeo, and Hersl) were riding in an unmarked vehicle on the 600 block of Bartlett Avenue. As the officers traveled southbound, they saw Paylor, who was also walking southbound on the south side of the block. D-Sgt. Burns immediately recognized Paylor, as he had previously participated in executing a search warrant at Paylor's residence at 651 Bartlett Avenue. While executing that search warrant, Burns and his colleagues recovered evidence that eventually led to Paylor's conviction on a felony drug charge and a misdemeanor firearms possession charge.

When the officers first observed Paylor, he looked over his shoulder (in the officers' direction) and immediately picked up his pace. He then ran onto the porch of 647 Bartlett and hopped over the walls of two adjoining porches. (As Paylor has noted in his motion, the homes on this portion of Bartlett Ave. are row homes, with porches partitioned by low walls).

As Paylor was fleeing from the officers, Detective Moore saw him reach into his waistband and remove a large black object, which, based on his training, knowledge, and experience, Moore suspected was a gun. When Paylor reached his residence at 651 Bartlett Ave., he placed the black object underneath a seat cushion on the front porch. He then entered his residence through the front door, notwithstanding the fact that the officers were ordering him to stop.

A few moments later, Detective Moore followed Paylor into the residence. He located Paylor near the basement stairwell on the first floor. He then apprehended Paylor and walked him back to the front porch as other officers secured the scene. As Moore and Paylor reached the front porch, Moore saw a cigar wrapper containing marijuana on top of the seat cushion (underneath of which Paylor had placed the large black object moments earlier).

As Moore recovered the cigar wrapper, Paylor spontaneously uttered, without prompting or questioning by police officers, something to the effect of, "the weed's mine, but I don't know anything about the gun." Following this statement, Moore lifted up the seat cushion—for the first time—and recovered a .45 caliber Heckler and Koch pistol, bearing serial number 25090291. The pistol was loaded with nine rounds, one of which was in the chamber.

## ARGUMENT

I. **THE WARRANTLESS ARREST OF PAYLOR AND SUBSEQUENT RECOVERY OF THE FIREARM WERE OBJECTIVELY REASONABLE UNDER THE FOURTH AMENDMENT.**

The government concedes that, as a general matter, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980); *see id*. at 576 (prohibiting "the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a *routine* felony arrest") (emphasis added). Importantly, however, the presumption may be overcome in certain cases, as "the ultimate touchstone of the Fourth Amendment is 'reasonableness.' " *Kentucky v. King*, 131 S. Ct. 1849, 1856 (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)); *see also United States v. Gori*, 230 F.3d 44, 51 (2d Cir. 2000) ("*Payton* does not hold or suggest that the home is a sanctuary from reasonable police investigation."). Thus, "the warrant requirement is subject to certain

3

reasonable exceptions." *King*, *supra*, 131 S. Ct. at 1856 (citation omitted).

One exception applies when "the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 394 (1978). The Supreme Court has identified several such "exigencies" in its case law. *See King*, *supra*, 131 S.Ct. at 1856-57 (citing cases). Of particular relevance here, it has long been established that "[p]olice officers may enter [a] premises without a warrant when they are in hot pursuit of a fleeing suspect." *Id*. (citing *United States v. Santana*, 427 U.S. 38, 42-43 (1976)).

In *Santana*, the Supreme Court held that a law enforcement officer conducting an otherwise proper arrest in public need not abandon his efforts simply because the suspect flees into his home. 427 U.S. 42-43. In multiple subsequent cases, courts have made clear that this principle applies not only to arrests on the basis of probable cause, but also to *Terry* stops on the basis of reasonable suspicion. *See*, *e.g.*, *Rivera v. Washington*, 57 Fed. Appx. 558, 562 (4th Cir. 2003) ("[C]ourts have recognized that a person cannot avoid a *Terry* stop simply by retreating into a home."); *United States v. Lenoir*, 318 F.3d 725, 730-31 (7th Cir. 2003) (exigency supported police entry into house in pursuit of suspected armed man who was intoxicated and who fled when approached by police); *United States v. Pace*, 898 F.2d 1218, 1228-29 (7th Cir. 1990) (proper for police to pursue suspect into curtilage garage of condominium based on reasonable suspicion he was an assassin, where defendant sped up and tried to elude officers when he noticed he was being followed); *Alto v. City of Chicago*, 863 F. Supp. 658, 661-62 (N.D. Ill. 1994) (officers with reasonable suspicion were not required to abandon pursuit when defendant fled into home); *United States v. Gomez*, 495 F. Supp. 992, 1004-05 (S.D.N.Y. 1979) (agents

4

with reasonable suspicion of criminal activity were permitted to pound on door after defendant slammed door in their face, and to force entry into the apartment) (citing *Edwards v. United States*, 364 A.2d 1209, 1214 (D.C. 1977)).

Pursuant to these authorities, the warrantless arrest of Paylor (and the subsequent recovery of the firearm from his porch) were justified by exigent circumstances and were therefore reasonable under the Fourth Amendment. As discussed above, the officers who participated in Paylor's arrest saw numerous indicators of criminal activity, all in a public location (the 600 block of Bartlett Avenue) before they ever entered Paylor's house. By way of review:

- When the officers first saw Paylor, he picked up his pace, ran onto the porch of 647 Bartlett, and then hopped the walls of two adjoining porches.

- As Paylor was fleeing from the officers, Detective Moore saw him reach into his waistband and remove a large black object, which he placed under a seat cushion on the front porch of his home (651 Bartlett).

- When the officers ordered Paylor to stop, he retreated into his residence through the front door.

Based on these observations, and based on the fact that one of the officers, Sgt. Burns, had previously executed a search warrant at 651 Bartlett (which resulted in a firearm charge against Paylor), the officers had probable cause—*before they entered Paylor's home*—to believe that Paylor was unlawfully carrying a firearm. At a minimum, the officers had reasonable, articulable suspicion that criminal activity was afoot. Thus, under the case law cited above, the officers were entitled to pursue Paylor, and to attempt to make an arrest (or, alternatively, a *Terry* stop) on the basis of what they saw. That arrest (or, alternatively, that *Terry* stop) was entirely set in motion in a public place, and Paylor could not derail it by resorting to the "expedient" of

escaping into his home. *Santana*, 427 U.S. at 42-43; *see also United States v. Schmidt*, 403 F.3d 1009, 1014 (8th Cir. 2005) (rejecting the notion that "the enforcement of the criminal laws resembles a children's game of tag where one is 'safe' if one reaches 'home' before being tagged by an officer") (citation omitted).

Once the officers arrested Paylor, they were further entitled, again under the exigent circumstances exception, to secure the firearm that they had seen Paylor had place under the seat cushion on his porch moments earlier. "One basis for a warrantless search under the exigency exception is to secure a gun." *United States v. Jenkins*, 426 F. Supp. 2d 336, 342 (E.D.N.C. 2006) (citing *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 298 (1967); *United States v. Reed*, 935 F. 2d 641, 642-43 (4th Cir. 1991); *United States v. Decator*, 1997 WL 770609 at * 8 (4th Cir. Dec. 11, 1997)); *see also United States v. Rodgers*, 924 F.2d 219, 222-23 (11th Cir. 1991) (exigent circumstances justified seizure of two handguns lying on couch, which suspect was prohibited from possessing). In short, as the officers stood on the porch of Paylor's home, they were faced with what they reasonably believed to be "an inherently dangerous weapon that could easily have been removed or hidden, or possibly used against them [or others]" in the event that they failed to secure it. *Reed*, *supra*, 935 F. 2d at 643. Under these circumstances, the Court should easily conclude that the seizure of the firearm was reasonable and did not run afoul of the Fourth Amendment.

## II. PAYLOR'S SPONTANEOUS STATEMENT THAT "THE WEED'S MINE, BUT I DON'T KNOW ANYTHING ABOUT THE GUN" IS ADMISSIBLE.

As discussed above, when Detective Moore apprehended Paylor, he escorted Paylor to the front porch of Paylor's home, as other officers secured the scene. Upon reaching the front porch, Moore observed a cigar wrapper containing marijuana on top of the seat cushion

6

(underneath of which Paylor had just hidden his gun). Paylor then spontaneously uttered, without any prompting or questioning by police officers, something to the effect of, "the weed's mine, but I don't know anything about the gun."

Paylor seeks to suppress this statement. He argues that the statement was obtained in violation of his Fifth and Sixth Amendment rights and was otherwise involuntary. He further argues that the statement was the fruit of an unlawful arrest. The latter argument fails, for as discussed above, the warrantless arrest of Paylor was objectively reasonable under the Fourth Amendment.

With regard to the former argument, this Court has recognized that "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *United States v. Wharton et al.*, 2014 WL 3943358 at * 21 (D. Md. Aug. 12, 2014) (Hollander, J.) (quoting *Miranda v. Arizona*, 384 U.S. 436, 478 (1966)); *see also United States v. Dupree*, 2013 WL 4499037 at * 8 (D. Md. Aug. 20, 2013) (Bennett, J.) ("[I]t is well established that spontaneous comments by a defendant are admissible in evidence.") (citing *United States v. Rhodes*, 779 F.2d 1019, 1032 (4th Cir. 1985); *United States v. Grant*, 549 F.2d 942, 946 (4th Cir. 1997)). In short, where a suspect in custody makes a voluntary statement, without being subject to interrogation or its functional equivalent, neither the Fifth nor Sixth Amendments, nor the Supreme Court's decision in *Miranda*, are implicated. *See Rhode Island v. Innis*, 446 U.S. 291, 300-301 (1980).

Here, Paylor volunteered his statement spontaneously and on his own initiative, not in response to questioning. Indeed, there is (or, more accurately, there will be) simply no evidence in the record that Detective Moore or any of his colleagues attempted to elicit information from

Paylor or otherwise engaged in coercive action. Under these circumstances, the Court should conclude that Paylor's statement that "the weed's mine, but I don't know anything about the gun" was freely and voluntarily given, without any compelling influences. *See Wharton et al.*, *supra*, 2014 WL 3943358 at * 21. The statement is therefore admissible.

## CONCLUSION

For all of the foregoing reasons, both of Paylor's motions should be denied.


Respectfully submitted,


Rod J. Rosenstein
United States Attorney


By:    /s/
     Peter J. Martinez
     Assistant United States Attorney
     36 South Charles Street
     Fourth Floor
     Baltimore, Maryland  21201

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of March, 2015 , I caused a copy of the

foregoing response to be served on defense counsel through the electronic case filing system.


/s/ _____

Peter J. Martinez
Assistant United States Attorney