IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | Crim. No. ELH-14-271 |
| **KEYON PAYLOR** | * | Civil No. _____ |
| | * | |

\* \* \* \* \*

### DECLARATION OF BRENDAN HURSON IN SUPPORT OF
### KEYON PAYLOR'S PETITION UNDER 28 U.S.C. § 2255

I, Brendan Hurson, make this declaration under oath. I affirm that the following is true and correct to the best of my knowledge.

1. The Office of the Federal Public Defender (D. Md.) has represented Keyon Paylor since his initial appearance in the District of Maryland in this case, which occurred on September 16, 2014. Although other lawyers in this office represented him then, I represented him beginning in March 2015, through the entry of his guilty plea and sentencing.

2. When I began working on this case, one of the first things that stood out was the fact that Detective Daniel Hersl was the arresting officer. Through my work in other cases, and my discussions with colleagues, I was familiar with Det. Hersl and allegations of his misconduct.

3. I knew that in a case such as Mr. Paylor's in order to succeed at a motions hearing or at a trial, the defense would have to convince the judge and/or jury that a police officer lied under oath. From my experience, this is a very difficult

EXHIBIT 8

task, and one that cannot be achieved by simply making the unsupported argument that a police officer lied. Nevertheless, the credibility of the officers in this case was the key issue in litigating Mr. Paylor's case.

4. I sought the information I deemed necessary to mount a viable challenge to the police officers' credibility. The correspondence included in Attachments 2 and 5 are examples of my attempts. In addition to these letters, I recall sending emails to, and having telephone conversations with, prosecutors seeking additional information about the potential corruption of the officers in Mr. Paylor's case. I also sought a subpoena for internal affairs records related to the officers involved in Mr. Paylor's arrest. See ECF/CM # 54 (ex parte submission in support of request for files) (Attachment 5). While I sought records for all the officers involved, I assumed the lion's share of misconduct allegations would relate to Det. Hersl, and the majority of my filings and correspondence addressed his alleged misconduct. Ultimately, the district court agreed to review complaints and files of alleged misconduct by Det. Hersl (and his colleagues). See ECF/CM # 46 (denying as moot an Ex Parte Request for a Subpoena in favor of in camera review). The government provided to the court what it represented to be all of the files and complaints related to Det. Hersl and the other officers who investigated and arrested Mr. Paylor. Id.

5. When the Court granted me access to only a few of the thirty (30) files/complaints it reviewed, see ECF/CM # 63 (Attachment 6), I knew that I was not given, and thus did not possess, sufficient information to mount a successful challenge to the officers' accounts of Mr. Paylor's arrest. Without concrete

2

evidence of Det. Hersl's willingness to lie under oath, I believed the government's case against Mr. Paylor – which hinged entirely on witness credibility – was strong. I believed that any motions I filed would be denied after an evidentiary hearing, and that a jury would convict him after a trial. Therefore, despite the fact that Mr. Paylor consistently maintained that the arresting officers' account of his arrest was substantially and materially inaccurate, and that he was innocent of the charges against him, I reluctantly but affirmatively advised him to abandon his motions to suppress evidence and accept the government plea offer and to plead guilty.

6. If I had access to information that appears to be available now regarding Det. Hersl's misconduct, my view of the case, and my advice to Mr. Paylor, would have been significantly different. I would have fought hard for an outright dismissal of the case. If that were not successful, I would have litigated the motion to suppress the evidence in the case. And if that were not successful, I would have advised Mr. Paylor that a key consideration in deciding whether to plead guilty or go to trial would have been Hersl's credibility and Mr. Paylor's ability to present evidence undermining Hersl's credibility. Indeed, armed with concrete evidence that could corroborate the defense theory that Mr. Paylor was wrongfully targeted by Det. Hersl and his colleagues and was actually innocent of the charges, the calculation about whether to plead guilty or proceed to trial would have changed substantially.

BRENDAN HURSON
Assistant Federal Public Defender