OFFICE OF THE FEDERAL PUBLIC DEFENDER
DISTRICT OF MARYLAND
NORTHERN DIVISION
TOWER II, NINTH FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND 21201-2705
TEL: (410) 962-3962   FAX: (410) 962-0872
EMAIL: brendan_hurson@fd.org

JAMES WYDA
FEDERAL PUBLIC DEFENDER

BRENDAN A. HURSON
ASSISTANT FEDERAL PUBLIC DEFENDER

March 20, 2014

*via email*
Peter Martinez
Assistant United States Attorney
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

Re: Request for Internal Affairs Records/Complaints in U.S. v. Paylor, ELH-14-271

Dear P.J.:

In our recent conference call, Judge Hollander expressed her preference for the parties to come to an agreement on the disclosure of relevant complaints lodged against officers involved in this case through, among others, the Internal Affairs Division ("IAD") complaint process. I write to formally request that you provide such material in advance of the April 20, 2015 motions hearing.

So that there will be no ambiguity in my request, I ask that you review any and all Baltimore City Police Department/Justice Department/U.S. Attorney's Office files/records for all of the officers involved in the investigation and arrest of Keyon Paylor in search of any complaint of misconduct, civilian or departmental. I ask that you disclose to me the substance of these complaints regardless of the nature of the complaint and regardless of whether it resulted in a sustained finding of wrongdoing or misconduct. In reviewing these files, I request that you pay particular attention to any *allegation* of or involving official misconduct, excessive use of force, false statements, misrepresentations, stealing, misappropriation, or any dishonest act that could, at minimum, affect a fact-finder's evaluation of the credibility of the officer. I further request that you review the files for any allegation of racial discrimination or bias of any kind as, to my knowledge, all officers are white and Mr. Paylor is African American. Should the review of the files reveal any allegations of misconduct or bias, I request that you promptly disclose to me all materials generated in connection with that allegation and, if applicable, any investigation launched in response. Alternatively, I request notification of the existence of the material so that I may request *in camera* review by the Court.

As I noted in our conference call with the Court, the disclosure of the requested material does not represent an agreement as to the admissibility of the material or the propriety of questioning at trial related to the allegations. Instead, it is merely an acknowledgment that the material exists and represents compliance with Fed. R. Crim. Pro. 16 (a)(1)(E)(i) (noting the obligation to provide the defense with "item[s] within the government's possession, custody, or control" that are "material to preparing the defense."). Given the specific facts of Mr. Paylor's case, I also note that I regard such

materials to also be Brady material and are probative of more than mere untruthfulness, also mandating that such material must be disclosed to the defense regardless of whether the claim is adjudicated in favor of the complainant.[1]

This case centers on the allegation that one or more officers "clearly observe [sic] Mr. Paylor reach into the front waistband area with his right hand before removing what appeared to be a black handgun." Statement of Probable Cause, 2. Discovery materials indicate that the officers who made these purported observations are:

| |
|---|
| Officer Daniel Hersl - Seq # G-491 (author of only written report/listed as complainant) |
| Officer Timothy Romeo - Seq # I-678 |
| Officer Jordan Moore - Seq # I-496 |
| Sgt. John Burns - Seq # G-940 |

My investigation has revealed a startling number of allegations of impropriety on the part of Officer Hersl, including the filing of numerous IAD complaints against him and the fact that at least three police brutality / false arrest lawsuits against him have recently settled for substantial amounts. Additional media coverage indicates that Officer Hersl recently provided misleading statements to a judge in a search warrant affidavit. Hersl later repeated these statements to a probation officer in a successful effort to guarantee the arrest of a young rap artist whom Hersl was apparently seeking to prevent from performing at a concert at the Baltimore Arena.

A recent Baltimore Sun article detailing misconduct within the Baltimore City Police Department prominently featured Detective Hersl. See Puente, Mark, Some Baltimore police officers face repeated misconduct lawsuits, Baltimore Sun, October 4, 2014 (attached).[2] The Sun

---

[1] Even unadjudicated acts may trigger confrontation rights under both the Sixth Amendment to the United States Constitution and Rule 608(b) of the Federal Rules of Evidence. See Davis v. Alaska, 415 U.S. 308 (1974) (defendant's Sixth Amendment confrontation rights violated when trial court precluded cross examination about witness' juvenile record and probation status); United States v. Leake, 642 F.2d 715 (4th Cir. 1981) (noting that Rule 608(b) allows cross examination about unadjudicated acts of misconduct probative of untruthfulness).

[2] According to 2013 FBI statistics, the Baltimore City Police Department has over 3,200 employees, and 2,800 officers. The Sun article apparently spotlighted four officers (only three, including Hersl, still employed at the time of the article) with significant records of alleged misconduct and settled lawsuits. That, out of thousands of officers, Hersl's record of alleged misconduct was significant enough to merit selection to this short list raises questions about the propriety of resting federal cases on his purported observations and recollections.

outlined Det. Hersl's history of apparent misconduct, including the notable fact that he had dozens of misconduct allegations formally lodged against him after just seven years on the force. This number has likely grown since it was first announced in 2006.[3] The article provided a quote from the late Judge John Prevas who, after reviewing Det. Hersl's IAD file in advance of a 2006 trial, stated: "[m]isconduct, sometimes when it's frequent enough, it indicates a lack of desire to tell the truth." Id. The article continued by noting more recent misconduct on the part of Det. Hersl that resulted in legal action, and detailed the hefty settlements made between the city of Baltimore and the plaintiffs alleging misconduct:

2010: Charles Faulkner said Hersl broke his jaw and nose with his fists and a police radio after the man fled. He later received probation before judgment for drug charges. The man sued Hersl; the city settled the lawsuit last month for $49,000.

2008: Taray Jefferson accused Hersl and another officer of breaking her arm when they searched for a drug suspect in a carry out store. The city settled the case in 2009 for $50,000.

2007: Lillian Parker was selling church raffle tickets when Hersl and Detective Calvin Moss accused her of selling drugs. She spent two days in jail, but prosecution dropped the charges against her. She sued in 2010; the city settled the case in 2012 for $100,000.

Id.

In addition to these incidents, my own investigation has revealed that Det. Hersl was the subject of an IAD complaint, and likely investigation by your office, in which an allegation was made that Det. Hersl threatened to "put," or plant, a gun on a complainant in order to manufacture probable cause to arrest the complainant for a firearms charge. This threat was apparently made by Det. Hersl against Eric Rich in October of 2007. Records reflect that Mr. Rich was charged with a federal offense in 2008, but the charge was uncharacteristically dismissed with prejudice later that year upon motion of the government soon after the Judge ordered disclosure of internal affairs records. See U.S. v. Rich, RDB-08-131. My understanding is that this dismissal may also have come after your office investigated allegations that Hersl (and other officers) inaccurately recounted the events surrounding the investigation and arrest of Mr. Rich.

More recently, Det. Hersl was spotlighted in a Baltimore CityPaper article revealing that he apparently provided misleading information to a state judge in an affidavit for a search warrant to

---

[3] The most recent Sun article noted that, in 2006, Officer Hersl and another officer had 46 complaints lodged against them, though only one had been "sustained." According to a separate 2006 Sun article, Hersl personally amassed 29 complaints seven years on the force. See Kane, Gregory, City can read between the lines of letters, Baltimore Sun, April 12, 2006. One such claim included the allegation that Hersl "poured beer over a woman's head and hit her in the face with a bottle."

secure entry into the home of Kevron Evans, a local musician who raps under the name "Young Moose." See Bayard Woods, The Detective and the Rapper, Baltimore CityPaper, October 14, 2014 (attached). According to the CityPaper, Hersl claimed in a search warrant affidavit that an on-line video posted to YouTube showed Mr. Evans illegally possessing a firearm. Hersl apparently swore to the state judge that at the time the video was posted, Mr. Evans was "prohibited from possessing firearms . . . [because he] was found guilty of Possession with the Intent to Distribute Narcotics in the Circuit Court for Baltimore City on 05/30/2014." In truth, Hersl was aware that the video was posted well in advance of Mr. Evans' conviction, and may have been filmed years before, thus establishing that the possession of the firearm in the video may have been lawful. The CityPaper article also outlined the questionable pursuit of Mr. Evans by Hersl that included, among other tactics, the identical claim to a state probation officer that the video unquestionably depicted the illegal possession of a firearm despite Hersl's knowledge that this statement wasn't true. That misleading statement was made in a successful effort to get a no-bail arrest warrant issued for Mr. Evans that would prevent Evans' appearance at a concert later that same day at the Baltimore Arena.[4]

In a separate CityPaper article about the incident and other interactions between Hersl and Mr. Evans, Mr. Evans described Hersl as follows:

> He's a dirty cop and he has a personal vendetta against me[.] He always lies on me and I only pleaded guilty to my last charge because he locked up a friend who wasn't supposed to go to jail. I can't remember a time when I wasn't bein' harassed by him. He keep harassing me and even attacked my mother. She asked Hersl for a warrant during the raid and he said 'You must be Moose's mother, I have something better!' and then locked her up.

D. Watkins, Out the Mud : The use of Young Moose's videos as probable cause makes me wonder if poor black artists can ever escape their pasts, Baltimore CityPaper, October 14, 2014 (attached).

---

[4] The CityPaper article details allegations related to Hersl's apparently highly personal pursuit of Mr. Evans apparently motivated by Hersl's relentless desire to ensure that Mr. Evans would be unable to perform at the concert. The article mirrors state court pleadings in which Hersl is quoted as saying "how unfortunate it was that [Mr. Evans] was not [present during the execution of a search warrant] so he could arrest [Evans]" and noting that Hersl told family members of Evans that he (Hersl) was aware of Evans' upcoming concert and quoting Hersl as saying he would "make sure that [Evans] did not have any chance to perform at [the] concert." Hersl later made good on those threats by delaying an application for an arrest warrant for Mr. Evans until just days before the August, 2014 concert. When Evans was able to post bail on the day of the concert (and thus was on track to perform at the show), Hersl personally engaged Evans' state probation officer to secure a no-bail violation of probation warrant for Mr. Evans. Hersl later ensured that warrant was served hours before the concert, going so far as to wait outside Central Booking to ensure that Evans wouldn't be accidentally released before the warrant was lodged as a detainer. Mr. Evans was not released and was unable to perform.

Based on these representations, it seems likely that an IAD complaint was filed against Officer Hersl related to his pursuit and investigation of Evans. At minimum, the notoriety of the allegations must have triggered some form of official review as I cannot believe the Baltimore City Police Department would let these public allegations of misconduct go without an official investigation or response.

My investigation also reveals that Officer Jordan Moore has been involved in at least two police shootings, one of them fatal. Police shootings generate an investigation and review, and typically result in the lodging of IAD complaints.

On March 21, 2010, Officer Moore shot and killed Thomas Tavon Miller in the 2600 Block of McElderry Street. My understanding is Officer Moore was struck in the hand during a gun battle with a person the Baltimore Police Department believes was Mr. Miller. Another officer with Moore was also struck in the exchange, and both were treated at Shock Trauma. I am unsure what investigation followed or if any IAD complaint was filed, but the Baltimore Sun published an article in which Mr. Miller's family alleged that the shooting of Mr. Miller was not justified. Herman, Peter, Relatives of man shot by Baltimore police angry, Baltimore Sun, March 24, 2010.

On May 15 or 16th of 2014, Officer Moore again fired his weapon, this time at a fleeing suspect. Moore reportedly struck a man who tried to flee police on a bicycle in the Johnston Square neighborhood of Baltimore City. While the person struck isn't identified in official police press releases, other sources reflect his name as Duane Saunders. I cannot find any record of charges being filed against Mr. Saunders – a seemingly odd occurrence given the police claim that Saunders was in possession of a firearm. Particularly if no charges were filed, it seems likely that some investigation into the shooting was performed and more likely that an IAD complaint was filed.

As of this writing, I have no specific information regarding allegations of misconduct against Sgt. Burns or Officer Romeo. However, I request you inquire into whether any exist, particularly because each of these officers has a long history of working with Det. Hersl.

I look forward to your response.

                                          Sincerely,

                                          _____/s/_____
                                          Brendan A. Hurson
                                          Assistant Federal Public Defender

cc: Keyon Paylor, BCDC